# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SHANE WALTER, and all others similarly situated, | ) ) ) ) Case No.: ) ) ) Judge: ) ) ) ) |
| Plaintiffs, | |
| v. | |
| CITY AND COUNTY OF DENVER, | |
| Defendant. | |

## COMPLAINT

Plaintiff Shane Walter ("Walter"), and all others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Margaret Angelucci, Matthew Pierce, and Alex Behn of Asher, Gittler & D'Alba, Ltd., hereby complain of Defendant, the City and County of Denver ("Defendant" or "the City"), for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). In support of their Complaint, Plaintiffs state and allege as follows:

## NATURE OF THIS ACTION

1. This is an action to recover unpaid overtime compensation and other relief under the FLSA, 29 U.S.C. §§ 207, 216, and for retaliation under the FLSA, 29 U.S.C. § 215(a)(3).

2. Since at least July 2021, and continuing through the present, Walter and all other similarly situated employees of the City have not been paid any overtime compensation for hours worked over forty in a seven-day workweek while training at the Fire Academy. Plaintiffs seek relief in the form of compensation at one and one-half times their regular rate(s) of pay for all hours worked at the Fire Academy in excess of forty in each seven-day workweek that fall within the applicable statute of limitations period, liquidated damages under the FLSA, interest, injunctive and declaratory relief, and all attorney's fees and costs incurred in bringing this action.

1

3.      In May 2024, Walter suffered threats of discipline in retaliation for inquiring into, and attempting to exercise, his rights under the FLSA. Walter seeks relief in the form of liquidated damages under the FLSA, interest, injunctive and declaratory relief, and all attorney's fees and costs incurred in bringing this action.

## JURISDICTION AND VENUE

4.      Jurisdiction for this action is conferred upon this Court by 28 U.S.C. § 1331, arising under 29 U.S.C. § 216(b).

5.      Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c) because the unlawful employment practices occurred in this judicial district, and Defendant has its principal place of business in this judicial district.

## PARTIES

6.      At all relevant times, Plaintiffs are or were "employees," as that term is defined within the meaning of Section 203(e) of the FLSA, 29 U.S.C. § 203(e), of Defendant City and County of Denver.

7.      Plaintiff Walter brings this action on his own behalf and on behalf of all other current and former employees similarly situated to him pursuant to 29 U.S.C. § 216(b). A copy of the named Plaintiff's consent form is attached hereto and contemporaneously filed herewith.

8.      Defendant City and County of Denver is a consolidated city-county and public employer located in Colorado, in this judicial district. Defendant City and County of Denver is a "public agency" as that term is defined in Section 203(x) of the FLSA, 29 U.S.C. § 203(x).

9.      At all relevant times, Defendant City and County of Denver was considered an "enterprise engaged in commerce or in the production of goods for commerce" for purposes of Section 203(s) of the FLSA, 29 U.S.C. § 203(s)(1)(C).

10. At all relevant times, Defendant City and County of Denver was an "employer" of Plaintiffs as that term is defined in Section 203(d) of the FLSA, 29 U.S.C. § 203(d), and, as such, was and is subject to the provisions of Section 7 of the FLSA, 29 U.S.C. § 207.

## FACTS COMMON TO ALL COUNTS

11. In order to become certified firefighters, newly hired members of the Denver Fire Department must attend and graduate from a training program at the City's Fire Academy.

12. The Fire Academy is a full-time training program that takes approximately 18 weeks to complete. This program is located primarily at the Denver Fire Department Training Center, and it includes classroom education and testing, intensive skills training, physical training and exercise, and various other tasks intended to train and prepare newly hired probationary firefighters to become certified members of the Denver Fire Department capable of responding to emergency calls and engaging in fire suppression.

13. Each Plaintiff commenced their employment with the Denver Fire Department as a probationary firefighter and attended the Fire Academy.

14. Each Plaintiff's official date of employment with the City and date of original appointment to the Denver Fire Department coincided with their first date of attending the Fire Academy.

15. While Plaintiffs were attending the Fire Academy, Defendant paid Plaintiffs an established salary for their straight-time hours of work.

16. Since at least July 2021, and continuing through the present, Defendant has maintained a policy of not compensating employees attending the Fire Academy any overtime compensation for hours of work performed over 40 in a workweek. Each of those employees was

3

paid only their established salary for straight-time hours of work while attending the Academy, with no consideration for the hours of overtime work performed each week.

17. Defendant has taken the position that probationary firefighters attending the Fire Academy qualify for a 21-day schedule under Section 7(k) of the FLSA, 29 U.S.C. § 207(k), and that probationary firefighters attending the Fire Academy did not work more than the maximum allowable hours during any 21-day period beyond which overtime compensation must be paid under that Section.

18. Prior to completing their training at the Fire Academy and graduating from that training program, Plaintiffs were not "employee[s] in fire protection activities" as defined under the FLSA, 29 U.S.C. § 203(y).

19. Plaintiffs were not trained in fire suppression prior to attending and graduating from the Fire Academy.

20. Plaintiffs' job responsibilities at the Fire Academy did not include fire suppression.

21. While they were attending training at the Fire Academy, Plaintiffs had no legal authority or responsibility to engage in fire suppression.

22. While they were attending training at the Fire Academy, Plaintiffs were not engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment was at risk.

23. Plaintiff Shane Walter was employed as a probationary firefighter and attended the Fire Academy during the period of August 15, 2022, through December 16, 2022.

24. Plaintiffs were paid their regular salary representing 40 hours of work per week for their work performed at the Fire Academy.

25. Plaintiffs were never paid any compensation in addition to their regular salary for weeks in which they performed more than 40 hours of work.

26. Plaintiffs worked five days per week at the Fire Academy, and Defendant required Plaintiffs to report to work at 4:30 a.m. each workday.

27. Plaintiffs' training at the Fire Academy generally ended between 3:15 and 4:00 p.m. each workday, at which point Defendant required Plaintiffs to complete certain chores. Plaintiffs were assigned to one of six groups on a rotating basis throughout the Academy, and specific chores were assigned to each of these groups. These mandatory chores included tasks such as cleaning Plaintiffs' stations and equipment, laying firehoses out to dry, emptying trash cans, and brewing coffee. Defendant did not compensate Plaintiffs for, or record, any time spent by Plaintiffs performing these mandatory chores beyond regular working hours.

28. Due to the schedule described above, Plaintiffs worked over 40 hours per week at the Fire Academy.

29. Plaintiffs were required to pass weekly written examinations while attending the Fire Academy. The material that was tested was not taught as part of Plaintiffs' on-site training during regular working hours. Therefore, Plaintiffs were required to attend nightly study sessions conducted by the Denver Fire Department at the Academy and/or study the material while away from the Academy. Defendant did not compensate Plaintiffs for any time spent attending study sessions or studying independently, and Defendant did not place a limit on the amount of time Plaintiffs were permitted to spend studying independently. All time spent studying was in addition to the hours worked on-site by probationary firefighters each workday.

5

30. Each Plaintiff was required to spend at least one to two hours per night, three to four nights per week, to complete this mandatory studying at either nightly study sessions or independent study.

31. Because Defendant did not address any of the study materials related to these weekly written examinations during Plaintiffs' regular hours of work, the additional hours worked by Plaintiffs studying for the weekly written examinations were mandatory and were not optional.

32. On May 9, 2024, Plaintiff Walter submitted a letter to Defendant via an email to the Denver Fire Department Administration email address. In this letter, Walter inquired as to whether overtime compensation would be paid for hours that Walter had worked while attending the Fire Academy.

33. On May 17, 2024, Shift Commander Michael Shepherd ("Shepherd") and Assistant Chief Montee Carpio ("Carpio") appeared at Plaintiff Walter's fire station and asked to speak with Walter and Lieutenant Tim Sipe ("Sipe"). Walter's colleague, Donne Nuanes, requested to join the meeting in his capacity as Union Steward. Shepherd stated that it was not a disciplinary meeting, and therefore, that Donne Nuanes was not permitted to attend.

34. During the May 17, 2024, meeting, Shepherd and Carpio reprimanded Walter for using what they considered unprofessional formatting in his May 9, 2024, email, and for ostensibly circumventing the chain of command, stating that Walter "should have known better" given his prior military experience.

35. During the May 17, 2024, meeting, Shepherd stated that he had also worked more than 40 hours per week while attending the Fire Academy, but that he had never received or asked for overtime compensation, and that seeking such compensation could harm Walter's career. Through these statements, Shepherd confirmed that the City has consistently maintained this

6

policy of not paying any overtime compensation to employees while they are attending training at the Fire Academy for years, if not for decades.

36. During the May 17, 2024, meeting, Shepherd stated that, if Walter continued to pursue the issue of overtime compensation for himself and other probationary firefighters attending the Fire Academy, it would be treated as insubordination, and Walter would be disciplined.

37. On May 20, 2024, Shepherd sent a written "recap" of his May 17, 2024, meeting with Walter via email to Walter and to various other City personnel. In that written recap, Shepherd once again reiterated in relevant part: "I asked you to stop pursuing your agenda to be compensated overtime for hours worked in the academy or comp time for hours spend [sic] studying for your tests in the academy. I stated that further action by you to do this would be considered insubordination."

38. Any reasonable employee in Walter's position would have been deterred from inquiring about his right to receive overtime compensation, or from requesting such compensation, as a result of the verbal and written threats of discipline leveled by Shepherd in response to Walter's inquiries.

39. On June 11, 2024, Walter received a letter from Division Chief Wendi Moeder ("Moeder") addressing Walter's inquiries regarding overtime compensation for probationary firefighters attending the Fire Academy.

40. In her June 11, 2024, letter, Moeder stated that Division Chief Warren Mitchell had audited Walter's Fire Academy schedule and found that "Academy instruction . . . normally ended at 1500," while "[t]he daily shift hours documented in Telestaff are 0600 to 1430." In this statement, Defendant notes that, during Walter's time at the Fire Academy, he was recorded in the

7

Telestaff time tracking system as working until 2:30 p.m. each workday. However, Defendant claims that Walter, in fact, generally worked until 3:00 p.m. each workday. Thus, Defendant acknowledges that the hours recorded in the Denver Fire Department's time tracking system do not reflect the actual hours worked by probationary firefighters at the Fire Academy.

41. On information and belief, the City has intentionally altered or falsified its timekeeping records for probationary firefighters attending training at the Fire Academy, by entering incorrect start times for each day of work and not accurately tracking the actual hours worked by each employee. The City took these actions in order to evade its obligations under the FLSA.

## COUNT I

*(Failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a))*

42. Plaintiffs re-allege and incorporate all previous paragraphs of this Complaint as though set forth fully herein.

43. Count I is brought against Defendant by Plaintiff Walter on behalf of himself and on behalf of all other similarly situated current or former employees of Defendant.

44. During their time enrolled in training at the Fire Academy, Plaintiffs were not "employee[s] in fire protection activities" as defined under the FLSA, 29 U.S.C. § 203(y). As such, Plaintiffs were not eligible to be placed on a 21-day, 159-hour work period under Section 7(k) of the FLSA, 29 U.S.C. § 207(k). Plaintiffs were therefore working a seven-day, 40-hour workweek during their training at the Fire Academy, and Defendant was required to pay them at least one and one-half times their regular rate of pay for all hours worked in excess of 40 per workweek.

8

45. During their training at the Fire Academy, Plaintiffs worked in excess of 40 hours during various workweeks, but Defendant did not pay them any compensation for those hours worked in excess of 40.

46. By failing and refusing to pay Plaintiffs one and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours during multiple workweeks occurring within the three years preceding the date on which this Complaint was filed, as alleged in detail above, Defendant has violated Sections 207 and 215(a)(2) of the FLSA, 29 U.S.C. §§ 207, 215(a)(2).

47. Defendant's violations of the FLSA were willful in that Defendant's failure to pay the proper overtime compensation was done knowingly and intentionally in violation of the FLSA or with reckless disregard for Defendant's obligations under the FLSA. During the May 17, 2024, meeting between Shepherd, Carpio, Sipe, and Walter, Shepherd acknowledged that he had also worked more than 40 hours per week at the Fire Academy. Therefore, the City has been aware of this policy for years, if not decades. Additionally, in Moeder's June 11, 2024, letter to Walter, the City acknowledges that the hours recorded in its time tracking system do not accurately reflect the hours actually worked by probationary firefighters at the Fire Academy. Thus, the City's policy against paying overtime compensation to probationary firefighters at the Fire Academy constitutes a willful violation of the FLSA.

**WHEREFORE,** Plaintiff Shane Walter, and all others similarly situated, pray that judgment be entered against Defendant as follows:

    A. A declaratory judgment finding that Defendant willfully violated Sections 207 and 215(a)(2) of the Act, 29 U.S.C. §§ 207 and 215(a)(2).

      B.      A money judgment against Defendant for all sums which may be found to be due to Plaintiffs, as compensatory damages, interest, liquidated damages, attorneys' fees and costs.

      C.      Injunctive relief requiring Defendant to rescind its unlawful policy and requiring Defendant to adopt a policy that properly compensates probationary firefighters attending the Fire Academy for all overtime hours worked.

      D.      An order directing all other and additional relief deemed just and proper by the Court.

## COUNT II

*(Unlawful retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3))*

48. Plaintiffs re-allege and incorporate all previous paragraphs of this Complaint as though set forth fully herein.

49. Count II is brought against Defendant by Plaintiff Shane Walter.

50. By threatening Walter with discipline in retaliation for inquiring into, and attempting to exercise, his rights under Section 7(a) of the FLSA, 29 U.S.C. § 207(a), Defendant has violated Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).

51. Any reasonable employee in Walter's position would have been dissuaded from inquiring about his right to receive overtime compensation, or from requesting such compensation, as a result of Defendant's retaliatory threats of discipline.

52. As a result of Defendant's retaliatory threats of discipline, Walter has suffered emotional distress, including ongoing anxiety and insomnia, as well as harm to his professional reputation.

**WHEREFORE,** Plaintiff Shane Walter prays that judgment be entered against Defendant as follows:

    A.    A money judgment against Defendant for all sums which may be found to be due to Plaintiff Walter, as compensatory damages, interest, liquidated damages, attorneys' fees and costs.

    B.    Nominal damages.

    C.    Declaratory and injunctive relief.

    D.    An order directing all other and additional relief deemed just and proper by the Court.

## JURY TRIAL DEMANDED

Plaintiffs request a jury trial on all questions of fact raised by the Complaint.

Respectfully submitted,

*/s/ Margaret Angelucci*

*/s/ Matt Pierce*

*/s/ Alex Behn*

Margaret Angelucci
Matt Pierce
Alex Behn
Asher, Gittler & D'Alba, Ltd.
200 W. Jackson Blvd., Suite 720
Chicago, Illinois 60606
(312) 263-1500 (phone)
(312) 263-1520 (fax)
maa@ulaw.com
mjp@ulaw.com
ajb@ulaw.com

*Attorneys for Plaintiffs*

## PLAINTIFF'S CONSENT FORM

I, _____, hereby consent to sue my employer, the City and County of Denver, as well as any necessary agent or representative of that entity, pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), for the purpose of asserting any and all claims for overtime compensation and unpaid wages, and any related claims for benefits, interest payments/penalties, and damages – including, but not limited to, any liquidated damages – under the FLSA and any similar federal or state law.  I agree to allow this consent to apply to all of the overtime and wage claims referred to in this consent form, whether such claims are asserted in an initial or any amended complaint. I authorize the law firm of Asher, Gittler & D'Alba, Ltd. to represent me in said lawsuit. I understand the nature of the suit and execute this consent voluntarily and freely.

_____
(Plaintiff's Signature)

Date: _____